# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 26, 2012

No. 12-30084

Lyle W. Cayce

Clerk

LOUIS ACKAL, Sheriff and Ex Officio Tax Collector of Iberia Parish; TOWN
OF DELCAMBRE,

Plaintiffs - Appellees

v.

CENTENNIAL BEAUREGARD CELLULAR L.L.C., doing business as
Centennial Wireless, formerly known as Iberia Cellular Telephone Company
L.L.C.; CENTENNIAL MOREHOUSE CELLULAR L.L.C.; CENTENNIAL
HAMMOND CELLULAR L.L.C.; CENTENNIAL COMMUNICATIONS
CORPORATION,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Louisiana

Before KING, SMITH, and BARKSDALE, Circuit Judges.

KING, Circuit Judge:

Before the court is an interlocutory appeal from an order granting
Plaintiffs' motion for class certification pursuant to Rules 23(a) and 23(b)(3) of
the Federal Rules of Civil Procedure. The certified class putatively consists of
various governmental entities within the State of Louisiana whose
representatives entered into contracts with Defendants for cellular telephone
service. In the underlying suit, Plaintiffs, who are or were customers of
Defendants, allege that Defendants engaged in deceptive billing practices that

No. 12-30084

constituted a breach of contract and violated the Louisiana Unfair Trade Practices and Consumer Protection Law. In appealing the district court's class certification order, Defendants argue, *inter alia*, that the district court abused its discretion when it certified Plaintiffs' class because, in so doing, it effectively certified an "opt in" class, which is impermissible under Rule 23. We agree. Accordingly, we REVERSE and VACATE the district court's class certification order, and REMAND for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 11, 2001, a group of cellular telephone customers filed suit in Louisiana state court against its members' respective service providers, including Defendants–Appellants Centennial Beauregard Cellular L.L.C. and its related entities ("Centennial"). The suit—which alleges causes of action for breach of contract and violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401 *et seq.*—is predicated on claims that Defendants engaged in improper and deceptive billing practices, the most notable of which is Defendants' alleged practice of overcharging customers by "rounding up" partial minute telephone calls to the next full minute.

The case was removed to federal court on the basis of diversity jurisdiction on October 17, 2001, and, thereafter, the parties engaged in extensive motion practice. As relevant here, this eventually led to the dismissal from the suit of several defendants, the limitation of the claims to Louisiana only, and the joinder, as plaintiffs, of the Iberia Parish Sheriff ("Iberia"), the Town of Delcambre ("Delcambre"), and the City of Jeanerette ("Jeanerette").[1] Additionally, in light of the settlement in Louisiana state court of a class action addressing claims similar to those raised in this suit, on May 19, 2009, the

---

[1] The district court subsequently stayed Jeanerette's claims pending arbitration.

No. 12-30084

district court dismissed all claims against certain of the Centennial defendants, except those raised by any state, federal, foreign, or local government. *See Abrusley v. Centennial Lafayette Cellular Corp.*, No. C-99-380 (La. Dist. Ct. May 6, 2008).[2]

On August 6, 2010, Plaintiffs moved for class certification of various Centennial customers, defining the proposed class as follows:

> All governmental entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone service as provided by Centennial Communications Corp. and all of its related entities, in the State of Louisiana from 1991 to 2001; and

> All natural persons, businesses and/or related entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone service as provided by Centennial Communications Corp. and all of its related entities, in the United States' territories of Puerto Rico and the US Virgin Islands and Jamaica from 1991 to present; and

> All natural persons, businesses and/or related entities who entered into contracts for a specific amount of airtime for a certain amount of money per minute for cellular service or wireless telephone service as provided by Centennial Communications Corp. and all of its related entities, in the United States, its territories of Puerto Rico and the US Virgin Islands and Jamaica from 1991 to present.

Ultimately, the district court denied the motion as to the individual and corporate customers, finding that those customers did not satisfy the requirements for class certification under Rules 23(a) or 23(b)(3). However, the

---

[2] These governmental entities had been expressly excluded from the class definition in *Abrusley*. As for the non-governmental entities, the class included only "present and former" customers—through October 19, 2007, the date the class was certified—of the Centennial entities that were parties in *Abrusley*.

3

No. 12-30084

court granted Plaintiffs' motion as to the governmental customers, certifying a class composed of "certain named governmental entities within the State of Louisiana." This class purportedly consists of 299 governmental entities, including parish police juries, parish school boards, and other local boards and commissions.[3]

Centennial timely appeals, raising numerous challenges to the district court's class certification order. First, Centennial argues that the district court erred in certifying a class of governmental entities to be represented in this action by private counsel. According to Centennial, Louisiana law requires that many of the entities satisfy various substantive criteria before they may retain private representation. Because those conditions were not satisfied as to most class members prior to certification, Centennial contends that the class requires members to "opt into" the suit, a result impermissible under Rule 23. Second, Centennial submits that Plaintiffs did not satisfy the requirements of Rule 23 that (1) issues common to the class predominate over individual issues, and (2) the certified class be manageable for trial. Finally, Centennial argues that the district court erred in certifying the class because, in so doing, the court failed to recognize enforceable arbitration clauses in many of the class members' contracts.[4]

---

[3] Centennial argues that the class certification was improper because its membership is not limited to state governmental entities, but rather includes at least one federal entity and one Native American tribal entity. Centennial also submits that the certified class improperly includes private organizations, special purpose subdivisions with no authority to sue, and Louisiana state entities that can be represented only by the state's attorney general. Finally, Centennial contends that at least 50 of the 299 listed entities purportedly constituting the class are duplicates, or are subdivisions of other members. Given our holding that the certified class impermissibly requires members to "opt in," we need not resolve this issue.

[4] Because we agree that the district court improperly created an "opt in" class, we need not address Centennial's arguments that individual issues impermissibly predominate over issues common to the class, that the class is not manageable, and that the district court erred in declining to enforce the applicable arbitration clauses.

No. 12-30084

## II. STANDARD OF REVIEW

A district court's decision to grant class certification is reviewed for abuse of discretion. *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003). "The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of [R]ule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). Application of an incorrect legal standard is, by definition, an abuse of discretion, and is reviewed de novo. *Benavides v. Chi. Title Ins. Co.*, 636 F.3d 699, 701 (5th Cir. 2011).

## III. DISCUSSION

### A.    Class Certification Under Rule 23

Plaintiffs moved for class certification under Federal Rules of Civil Procedure 23(a) and 23(b)(3). Rule 23(a) imposes four prerequisites on a class seeking certification: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (alterations in original) (quoting Fed. R. Civ. P. 23(a)). "In addition to these prerequisites, a party seeking class certification under Rule 23(b)(3) must also demonstrate both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005) (internal quotation marks and citation omitted).

Significantly, Rule 23 also contains a so-called "opt out" clause, providing that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members . . . notice . . . that the court will exclude from the class any member

5

who requests exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v). The ability to "opt out" of a Rule 23(b)(3) action is necessary because, by operation of the rule's provisions, "a class is described [and] if the action is maintainable as a class action, each person within the description is considered to be a class member and, as such, is bound by judgment . . . unless he has 'opted out' of the suit." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 (5th Cir. 2008) (quoting *LaChapelle v. Owens–Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) (per curiam)). This process is to be distinguished from collective actions maintained under statutes like the Fair Labor Standards Act, 29 U.S.C. § 216(b), under which "no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively '*opted into*' the class; that is, given his written, filed consent." *Sandoz*, 553 F.3d 913 at 916 (quoting *LaChapelle*, 513 F.2d at 288) (emphasis added).

Unlike these types of statutory collective actions, however, proceedings under Rule 23 do not require that class members affirmatively "opt in," nor is such a requirement mandated by due process considerations. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("We reject petitioner's contention that the Due Process Clause of the Fourteenth Amendment requires that absent plaintiffs affirmatively 'opt in' to the class, rather than be deemed members of the class if they do not 'opt out.'"). Indeed, as one of our sister circuits aptly has noted, "[n]ot only is an 'opt in' provision not required, but substantial legal authority supports the view that by adding the 'opt out' requirement to Rule 23 . . ., Congress *prohibited* 'opt in' provisions by implication." *Kern v. Siemens Corp.*, 393 F.3d 120, 124 (2d Cir. 2004). This view is bolstered by the fact that, in drafting Rule 23, the Advisory Committee on Civil Rules "rejected the suggestion 'that the judgment in a [Rule 23](b)(3) class action, instead of covering by its terms all class members who do not opt out, should embrace only those individuals who in response to notice affirmatively

signify their desire to be included.'" *Id.* (quoting Benjamin Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv. L. Rev. 356, 397 (1967)).

The rationale behind the Committee's decision to include only an "opt out" provision in Rule 23 was that requiring individuals to affirmatively "opt in" "would result in freezing out the claims of people—especially small claims held by small people—who for one reason or another, ignorance, timidity, unfamiliarity with business or legal matters, will simply not take the affirmative step." *Id.* (quoting Kaplan, 81 Harv. L. Rev. at 397–98). This sentiment was echoed by the Supreme Court in *Shutts*, in which the Court explained:

> Requiring a plaintiff to affirmatively request inclusion would probably impede the prosecution of those class actions involving an aggregation of small individual claims, where a large number of claims are required to make it economical to bring suit. The plaintiff's claim may be so small, or the plaintiff so unfamiliar with the law, that he would not file suit individually, nor would he affirmatively request inclusion in the class if such a request were required by the Constitution.

472 U.S. at 812–13 (internal citation and footnote omitted).[5]

Thus, as we have explained previously, because "the clear thrust of [Rule 23(b)(3)] . . . is to minimize the requirement of active intervention by numerous members of an affected class," "[o]pting in [is] not necessary before the determination of liability." *Robinson v. Union Carbide Corp.*, 544 F.2d 1258, 1261 (5th Cir. 1977), *modifying on reh'g*, 538 F.2d 652 (5th Cir. 1976); *see also id.* at 1262 (Wisdom, J., concurring) (explaining that the notice at issue in *Robinson* was not defective under "Rule 23(c)(2) because it [did] not require

---

[5] While the *Shutts* Court was considering the propriety of an "opt out" class certified under a state procedure rather than under Rule 23, 472 U.S. at 802–03, the Court's reasoning applies equally well here.

members to opt-into the class action in order to be bound by it").[6]  Other courts are in accord.[7]  In *Kern*, for example, the court explained that it could not "envisage any circumstances when Rule 23 would authorize an 'opt in' class in the liability stage of a litigation."  393 F.3d at 128.  Likewise, in *Clark v. Universal Builders, Inc.*, the Seventh Circuit held that a lower court committed error by "requiring an affirmative response for inclusion" in a class certified pursuant to Rule 23, because "an affirmative request for inclusion in the class is contrary to the express language of Rule 23(c)(2)(B)."  501 F.2d 324, 340 (7th Cir. 1974).[8]

Simply put, "[t]here is no authority for establishing 'opt-in' classes in which the class members must take action to be included in the class."  5 James Wm. Moore et al., *Moore's Federal Practice* § 23.104[2][a][ii] (3d ed. 2004).

## B.    Plaintiffs' Class Impermissibly Requires Members to "Opt In"

In hearings related to their motion for class certification, Plaintiffs described the class here at issue as "almost like an opt-out" class.  This measured characterization was based on Plaintiffs' acknowledgment that Louisiana law limits the ability of certain governmental entities—including

---

[6] Although "opt in" provisions are impermissible under Rule 23 at the class certification stage, this should be distinguished from the recovery stage, when class members may well be required "to come forward to establish their entitlement to portions of the recovery." *Robinson*, 544 F.2d at 1260–61.

[7] Legal scholars likewise are in agreement that "[n]othing in Rule 23(c) authorizes courts to impose a requirement that individual class members file a notice affirmatively opting *in* to the class or affirmatively requesting *inclusion* as a condition of participation in the class action or any recovery that the class may obtain." 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.104[3][a] (3d ed. 2004); *see also* 7AA Charles Alan Wright et al., *Federal Practice and Procedure* § 1787 (3d ed. 2005) (explaining that "opt in" provisions for classes certified under Rule 23 are "directly contrary to the philosophy of Rule 23(c)(2)").

[8] *See also Enter. Wall Paper Mfg. Co. v. Bodman*, 85 F.R.D. 325, 327 (S.D.N.Y. 1980) ("Rule 23(c)(2)(B) calls for a notice that enables prospective members to opt-out, in language strongly suggesting the impropriety of opt-in requirements (i.e. 'the judgment, whether favorable or not, will include all members who do not request exclusion').").

many of those in the certified class—to be represented by private counsel as prescribed by this class action. In particular, Louisiana Revised Statute section 42:263 provides:

> No parish governing authority, levee board . . . , parish school board, city school board, or other local or state board shall retain or employ any special attorney or counsel to represent it in any special matter or pay any compensation for any legal services whatever unless a real necessity exists, made to appear by a resolution thereof stating fully the reasons for the action and the compensation to be paid. The resolution then shall be subject to the approval of the attorney general and, if approved by him, shall be spread upon the minutes of the body and published in the official journal of the parish.

La. Rev. Stat. Ann. § 42:263(A) (2010).

In explicating the requirements contained in section 42:263, the Louisiana attorney general has issued a written opinion properly stating that the statute authorizes those governmental entities subject to it "to retain special counsel only when (1) a real necessity exists (2) which is declared and memorialized by a resolution stating the reasons for employment of counsel and the compensation to be paid, (3) which resolution must be approved by the attorney general and (4) if approved, spread upon the minutes of the body and published in the official journal of the parish." La. Att'y Gen. Op. No. 1989-612, 1989 La. AG LEXIS 543, at *1–2. The attorney general also has noted that except as provided in section 42:263, "it is unlawful for any governmental entity subject to the *ex officio* legal representation of the district attorney to retain or employ private counsel."[9] La. Att'y Gen. Op. No. 1999-413, 2000 La. AG LEXIS 16, at *6.

---

[9] Louisiana Revised Statute section 42:261 sets forth the entities subject to a district attorney's legal representation. As relevant, that statute provides: "the district attorneys of the several judicial districts other than the parish of Orleans shall, . . . be the regular attorneys and counsel for the parish governing authorities, parish school boards, and city school boards within their respective districts and of every state board or commission domiciled therein, the members of which, in whole or in part, are elected by the people or appointed by the governor or other prescribed authority." La. Rev. Stat. Ann. § 42:261(A)(2011).

No. 12-30084

Here, neither party disputes that, to this point in the litigation, only the class representatives, Iberia and Delcambre, have satisfied the procedures set forth in section 42:263 for the retention of private counsel.[10]  Additionally, both parties agree that numerous other entities within the certified class are subject to the statute's mandates.  Plaintiffs argue, however, that it is sufficient, at the class certification stage, that the class representatives have satisfied the requirements of section 42:263. Plaintiffs maintain that "upon completion of the appellate process, [they will] pursue the same process and seek approval from every entity listed in order to comply with any statutory requirements for certification."  In other words, Plaintiffs view the satisfaction of section 42:263's requirements as a mere "procedural issue" that can be addressed *after* class certification.

Plaintiffs underestimate, however, the import of this "procedural issue." First, nothing in section 42:263 suggests that private representation of entities subject to the statute may be undertaken *while* the entities pursue satisfaction of the statute's requirements.  As importantly, given the various "procedural" hurdles that must be cleared  under section 42:263 before a class member even is authorized to participate in this action, Plaintiffs have effectively created an "opt in" class.  In other words, contrary to the requirements of a Rule 23(b)(3) action, here, a potential class member's decision to take no action upon receipt of notice does not result in the entity's inclusion in the class.  Rather, the default position of each class member is that it is *not* in the class until it successfully completes a series of actions required by law for it to participate in the suit. Requiring such affirmative acts from putative class members before they may actually participate in a Rule 23 action is contrary to the express provisions of Rule 23(c)(2)(B).

---

[10] While Jeanerette also has received authorization to obtain private counsel in connection with this suit, as noted, its claims have been stayed pending arbitration.

10

No. 12-30084

In fact, Plaintiffs' attempt to certify the class here is analogous to the scenario presented in *Kern*. 393 F.3d 120. There, plaintiffs moved to certify a class composed of heirs, beneficiaries, and personal representatives of individuals who died in a ski train fire in Austria. *Id.* at 122. Class members were to be defined, in part, by "their willingness to take [the] affirmative action of consent[ing] to be bound by the judgment." *Id.* at 126 (internal quotation marks and citation omitted, alterations in original). Such a class was justified, from the district court's perspective, on the basis that "it would be unfair to presumptively include members in a class for which membership depends on a waiver of . . . the right of foreign class members to relitigate their claim in foreign courts." *Id.* (citation omitted). The Second Circuit rejected the district court's reasoning, however, agreeing with the defendants' argument that the lower court had "overstepped the bounds of Rule 23 by certifying an 'opt in' class." *Id.* at 122.

Likewise here, the district court abused its discretion in certifying a class under Rule 23 that operates as an "opt in" class. Had Plaintiffs received authorization under section 42:263 for all class members to retain private counsel prior to seeking certification of the class, the outcome of this class certification issue might have been different. As is, however, class members must effectively "opt into" the class by satisfying a number of preconditions before they legally may be included in the class, for even if they wish to participate in the action, they may not do so until they affirmatively: (1) establish that a "real necessity exists" for the retention of private counsel, (2) enact a resolution "stating fully the reasons for the action and the compensation to be paid," (3) receive the attorney general's approval of the resolution, and (4) publish the resolution in their minutes and the official journal of the applicable

parish.[11]    La. Rev. Stat. Ann. § 42:263(A) (2010).  As we have discussed, no authority exists under Rule 23 for certifying a class of this nature.

## IV. CONCLUSION

Accordingly, we REVERSE and VACATE the district court's class certification order, and REMAND for further proceedings consistent with this opinion.

---

[11] In fact, it is not a foregone conclusion that all putative class members will eventually satisfy the necessary legal requirements for participating in this action, as section 42:263 "clearly grants to the Attorney General the discretion to either approve or disapprove the resolutions presented to him pursuant to that section." *Flanagan v. Guste*, 359 So. 2d 686, 688 (La. Ct. App. 1978).