# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20514

United States Court of Appeals
Fifth Circuit

**FILED**
November 25, 2019

Lyle W. Cayce
Clerk

GERRY MONROE,

Plaintiff - Appellant,

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT,

Defendant - Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-1991

Before ELROD, WILLETT, and OLDHAM, Circuit Judges.

PER CURIAM:[*]

Houston Independent School District ("HISD") banned Gerry Monroe from all HISD "[f]acilities, activities and meetings." The facilities ban followed two different HISD meetings. At the first, a reassignment hearing for an HISD employee, Monroe became belligerent, yelled, banged on the table, swore profusely, and insulted administrators almost incessantly. Monroe said, "I'm gonna turn that m*****f***ing school upside down" and that he was going "to knock out three of [HISD's] principals." Monroe repeatedly yelled racial epithets that do not merit reprinting, even with asterisks.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20514

Two days later, Monroe attended an HISD board meeting. He wore a bandana around his neck and a t-shirt with an HISD principal's picture on it. Above her picture, the shirt said, "PRINCIPAL IRMA SANDATE MUST GO!"; below her picture, it said, "BECAUSE SHE DON'T LIKE BLACK PEOPLE." Monroe gave an angry speech and repeatedly called the principal an "idiot." He insisted that she immediately be fired. At the end of his speech, Monroe paused and raised the bandana over his mouth towards his eyes and said, "I got a team that can protect every last one of [the teachers]. You need some help?" Lowering his bandana, Monroe shouted "Do something with that idiot over there. This is the mandate: Either you take her out or I'm going to take her out." Throughout his speech, including during the mandate, he pointed at the board with a hand gesture that, according to some in the room, looked like a gun. Monroe stated that he did not remember using a gun gesture during the meeting.

On April 11, 2019, HISD issued a criminal trespass warning that banned Monroe from HISD facilities indefinitely. Monroe sued. His complaint stated that "HISD 'banned' him from entering all HISD facilities;" that this "'ban' . . . prevented [him] from attending the May 9, 2019 meeting of the HISD Board of Trustees;" and that this "ban" constituted a "prior restraint" and "viewpoint discrimination." He also sought to enjoin HISD officials from enforcing the "April 11, 2019 indefinite 'ban' on him entering its facilities, meetings, and activities."

After Monroe filed suit, HISD changed its facilities ban. The day before the motion hearing in district court, HISD sent Monroe a new letter stating the ban would end on December 31, 2019. That July 10 letter also included a list of bullet points detailing what it called "existing HISD policy." According to this letter, HISD considers the following to be "conduct [that] disrupts and interferes with proceedings[:]" "name-calling," the use of signs or clothing

2

"containing offensive or derogatory remarks about any HISD Board member or employee," "yelling," and the use of "offensive" language.  The letter warns Monroe that he may be punished if he "engage[s] in conduct listed above on HISD property."  Monroe did not amend his complaint to challenge the July 10 letter or amend his request for a preliminary injunction to challenge this "clarification" of "existing HISD policy."

On July 11, 2019, the district court held a preliminary injunction hearing. The parties discussed the July 10 letter, and the court noted that "the criminal trespass warning remains in effect through December 31, 2019, in other words, a period of less than six months."  The court advised HISD to remove certain representations in the July 10 letter that Monroe objected to. After this hearing—on July 15, 2019—HISD sent Monroe a letter that removed those representations. The remaining four paragraphs of the letters are identical: These sections detail the duration of the facilities ban, a process for contacting school principals, and a bullet point list of conduct and speech HISD considers inappropriate. Monroe did not amend his complaint or his request for preliminary injunction to challenge the July 15 version of HISD's ban. Finally, on July 19, 2019, the district court refused to enjoin HISD. The court analyzed the ban as it was "stated in [HISD's] July 15, 2019 letter."

Monroe appealed the denial of a preliminary injunction. We have jurisdiction under 28 U.S.C. § 1292(a)(1). Our review is for abuse of discretion. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

On appeal, Monroe challenges the July 15 ban and also challenges HISD's references to "existing HISD policy" in their most recent letters to him. Monroe raises a number of issues with this "existing HISD policy" and its restrictions on "offensive" speech and "name-calling" that, if true, would give us grave concerns under the First Amendment. After all, "[t]he language of the political arena . . . is often vituperative, abusive, and inexact"—and yet the

First Amendment often safeguards such speech. *Watts v. United States*, 394 U.S. 705, 708 (1969). And a rule could not be viewpoint neutral "if it provided that public officials could be praised but not condemned." *Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017).

Here, however, neither "existing HISD policy" nor HISD's "clarification" in the July 10 or July 15 letters are mentioned anywhere in Monroe's complaint. Neither is mentioned in his request for preliminary injunction. And while "existing HISD policy" was obliquely mentioned at that hearing, Monroe did not object when asked by his own attorney whether he intends to follow HISD's rules and regulations in the future. Monroe acknowledged that he was "very embarrassed" by his conduct and promised to comply with HISD's rules and regulations—specifically, that he would be "professional . . . [and participate] in a manner where people don't feel threatened." The record on the "existing HISD policy" and its clarification is thus nonexistent or at best undeveloped.[1] For this reason, it is inappropriate for this court to rule on Monroe's newfound challenge to "existing HISD policy" or HISD's clarification thereto.

---

[1] During oral argument, Monroe's attorney stated that he submitted to the court a written response to the July 15 letter prior to the court's July 19 order. To the extent that Monroe argues that his written response substitutes for a hearing under Rule 65(a), it does not. See FED. R. CIV. P. 65(a)(2); 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2941 (3d ed. 2019) ("Some type of a hearing also implicitly is required by subdivision (a)(2), which was added in 1966 and provides either for the consolidation of the trial on the merits with the preliminary-injunction hearing or the inclusion in the trial record of any evidence received at the Rule 65(a) hearing."). For example, unlike a live hearing, a one-sided, written statement from an attorney lacks direct witness testimony, the opportunity to assess the credibility of witnesses, and the opportunity to challenge credibility and evidence through cross-examination. Plus, neither the detailed fact section of Monroe's brief nor the district court's order denying injunctive relief mentioned Monroe's July 18 written submission, which underscores that it lacked substance sufficient to create a record regarding HISD's July 15 letter. The district court's order does, however, recognize HISD's July 15 letter itself. Notably, the court's analysis of the July 15 letter focuses on how it limited the duration and scope of the April 12 criminal trespass warning, not on the new language summarizing "existing HISD policy."

No. 19-20514

The Federal Rules of Civil Procedure give the district court—not this one—the tools to develop this record. Rule 65 requires a hearing before issuing a preliminary injunction. *See* FED. R. CIV. P. 65(a)(2); 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2941 (3d ed. 2019). But at the Rule 65 hearing in this case, the facilities ban was the only issue in front of the district court. As a result, the record does not indicate the "reasons why" an injunction should be issued against the "existing HISD policy." FED. R. CIV. P. 65(d)(1)(A). The record also does not include what "specifically" an injunction against enforcement of the "existing HISD policy" would do.  FED. R. CIV. P. 65(d)(1)(B). And the record does not include information to "describe in reasonable detail . . . the act or acts restrained." FED. R. CIV. P. 65(d)(1)(C). For instance, the record does not describe: (1) who at HISD enforces the "existing HISD policy," (2) how the "existing HISD policy" is enforced, (3) when it is enforced, (4) in what contexts it is enforced, and (5) against whom it is enforced. The requirements of Rule 65 are strict because a preliminary injunction "is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 690 (2008). Accordingly, it is appropriate to remand Monroe's challenge to the existing policy and the specific prohibitions in the July 10 and July 15 letters so the district court can develop the record and provide a reasoned analysis.

Given the parties' representations at oral argument, the only aspect of the facilities ban that remains before us is the prohibition on Monroe attending HISD Board of Education meetings. The ban will expire of its own accord on December 31, and the only regular meeting scheduled before then will occur on December 12. It is also appropriate for the district court to revisit its analysis of Monroe's request to attend that meeting.[2]

---

[2] We are not, as the concurring opinion contends, permitting Monroe to "amend his injunctive request at argument before our Court." Indeed, we expressly reject that attempt, which is why we decline to analyze his challenge to existing HISD policy. Rather, we remand

The district court opinion does not analyze whether Monroe's speech or conduct constituted a true threat. The opinion properly acknowledges that "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). But it does not articulate what speech or conduct of Monroe reached the level of a true threat. If no statement or action did, then HISD would be restraining Monroe from speaking at a public meeting based on the content of his speech or his viewpoint. "When we have no notion of the basis for a district court's decision, because its reasoning is vague or was simply left unsaid, there is little opportunity for effective review." *Myers v. Gulf Oil Corp.*, 731 F.2d 281, 284 (5th Cir. 1984). For that reason, "we have not hesitated to remand a case to the district court for an explanation of its decision when no explanation was originally given." *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 418 (5th Cir. 2008).

When conducting that analysis, the district court must exercise its own judgment. A police officer's testimony "that he felt Plaintiff's threats at the April 11 meeting were concerning from a law enforcement perspective" does not suffice. Many statements that are "concerning from a law enforcement perspective" are not "true threats" as a matter of law. *See, e.g., N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 902 (1982) (holding that the admonishment "If we catch any of you going in any of them racist stores, we're

---

a challenge to the facilities ban that was adequately briefed and contested in the district court. We need not hypothesize whether "the school board will defend itself under the 'true threat' doctrine." We know it will: It already did in its opposition to Monroe's motion for preliminary relief. *See* Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction at 10 ("HISD reasonably construed Plaintiff's threat that he would 'take out' one of its administrators as an unprotected 'true threat.'"). What is lacking is analysis of whether that statement actually rose to the level of a true threat.

gonna break your d*** neck" did not constitute a true threat). Perhaps Monroe's statements are an attempt to get a principal fired through protest, public activism, and political activity. Perhaps they were a legitimate threat to murder a school principal.  The district court needs to make that call.

In doing so, the true threat determination must be limited to whether Monroe "mean[t] to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. Whatever harm the target of the purported threat received is irrelevant.  This makes sense, since a statement can be a true threat even when the speaker does not "intend to carry out the threat."  *Id.* at 560. Principal Sandate was not at the board meeting, was not watching it live on television, and did not learn of Monroe's statement until the next day. It is unclear what light she can shed on Monroe's intention at the time of the utterance. And if the speech was not a true threat, considerations of harm are doubly barred. The Supreme Court has chosen "to protect even hurtful speech on public issues to ensure that we do not stifle public debate." *Snyder v. Phelps*, 562 U.S. 443, 462 (2011).  That includes speech that actually causes harm.  *See id.* at 458–59 (setting aside a jury verdict imposing tort liability for intentional infliction of emotional distress where the speech was on a matter of public concern, and thus "entitled to 'special protection' under the First Amendment").

Finally, and perhaps most importantly, the fora of a *school* and a *school board meeting* must be distinguished. The district court correctly noted that school officials have the power to "protect the public from . . . boisterous and threatening conduct." *Carey v. Brown*, 447 U.S. 455, 470 (1980) (quoting *Gregory v. Chicago*, 394 U.S. 111, 118 (1969) (Black, J., concurring)). And it is also true that educators have heightened abilities to restrict speech on school property.  *See Lovern v. Edwards*, 190 F.3d 648, 655 (4th Cir. 1999). But the

district court relied on those cases to determine that HISD reasonably banned Monroe from speaking at a school board meeting. The reasonableness of his ban must be evaluated in light of the purpose of *that* forum, not that of a school.[3] And "[a]pplication of an incorrect legal standard is, by definition, an abuse of discretion, and is reviewed de novo." *Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 215 (5th Cir. 2012).

"We are a court of review, not of first view," *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005), and the rules governing preliminary injunctions are strict. We REMAND to the district court. The district court should determine in the first instance whether and to what extent Monroe has adequately alleged a violation of the "existing HISD policy" or HISD's clarification thereof and, following the mandates of Rule 65, determine whether a preliminary injunction should issue. The court should also, in a manner consistent with this opinion, decide whether HISD should be enjoined from enforcing its facilities ban on Monroe at the December 12 Board of Education meeting.

---

[3] In fact, Monroe's current challenge concerns only the ability to speak at the "Hearing of Citizens" portion of the meeting. *See* Reply Br. at 13

No. 19-20514

ANDREW S. OLDHAM, Circuit Judge, concurring in part:

I agree with much of the Court's opinion on Rule 65 and its strictures. My unease stems from the confusion over what exactly Monroe intends to challenge and why. Our panel correctly rejects Monroe's attempt to amend his preliminary-injunction motion in a "post-hearing letter." *See supra* at 4–5 n.1. Shouldn't we likewise reject his attempt to amend his injunctive request at argument before our Court? *Cf. id.* at 6–8 (addressing arguments not raised in Monroe's preliminary-injunction request). When this case goes back to the district court, maybe Monroe will decide to challenge the school district's "existing policies" in his motion for preliminary injunction. Or maybe he'll challenge something else. *Cf. id.* at 7–8 & n.3 (conflating challenged and unchallenged HISD policies). Depending on what Monroe does on remand, maybe the school board will defend itself under the "true threat" doctrine. Or maybe they'll invoke something else. I'd let the parties make those choices on their own in the first instance. That is the sort of "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult . . . questions." *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (quotation omitted).

The First Amendment protects some of the most important rights recognized in our Constitution. And preliminary injunctions are powerful tools for protecting those rights. It's all the more important, then, to be exceedingly precise in wielding the former, the latter, or in this case, both. I'd await a proper vehicle before saying more.