# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2021

Lyle W. Cayce
Clerk

No. 18-50846

Cathi Cleven, for herself and all others similarly situated; Tara Cleven, for herself and all others similarly situated; Areli Arellano, for herself and all others similarly situated; Joe L Martinez, for himself and all others similarly situated,

*Plaintiffs—Appellees*,

*versus*

Mid-America Apartment Communities, Incorporated; Mid-America Apartments, L.P.; CMS/Colonial Multifamily Canyon Creek JV, LP,

*Defendants—Appellants*,

consolidated with

No. 18-50851

Nathanael Brown, for himself and all others similarly situated,

*Plaintiff—Appellee*,

*versus*

MID-AMERICA APARTMENT COMMUNITIES, INCORPORATED, AS GENERAL PARTNER OF MID-AMERICA APARTMENTS, LP; MID-AMERICA APARTMENTS, L.P., AS SUCCESSOR IN MERGER TO POST APARTMENT HOMES, LP DOING BUSINESS AS POST WORTHINGTON DOING BUSINESS AS POST SOUTH LAMAR DOING BUSINESS AS POST EASTSIDE DOING BUSINESS AS POST PARK MESA DOING BUSINESS AS POST GALLERY DOING BUSINESS AS POST WEST AUSTIN DOING BUSINESS AS POST SIERRA AT FRISCO BRIDGES DOING BUSINESS AS POST KATY TRAIL DOING BUSINESS AS POST ABBEY DOING BUSINESS AS POST ADDISON CIRCLE DOING BUSINESS AS POST COLE'S CORNER DOING BUSINESS AS POST BARTON CREEK DOING BUSINESS AS POST HEIGHTS DOING BUSINESS AS POST LEGACY DOING BUSINESS AS POST MERIDIAN DOING BUSINESS AS POST MIDTOWN SQUARE DOING BUSINESS AS POST SQUARE DOING BUSINESS AS POST UPTOWN VILLAGE DOING BUSINESS AS POST VINEYARD DOING BUSINESS AS POST VINTAGE DOING BUSINESS AS POST WASHINGTON,

*Defendants—Appellants.*

---

Appeals from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-820
USDC No. 1:17-CV-307

---

Before OWEN, *Chief Judge*, and SMITH and DENNIS, *Circuit Judges*.
PRISCILLA R. OWEN, *Chief Judge*:

In two separate cases, Plaintiffs have sued their landlord, Mid-America Apartment Communities (MAA), asserting that it charged unreasonable late fees in violation of the Texas Property Code. In both cases, Plaintiffs sought to certify a class under Rule 23 of the Federal Rules of Civil Procedure. The district court certified the class in both instances. MAA

sought interlocutory review of the district court's class certification.  We REVERSE and REMAND.

## I

Both cases allege violations of section 92.019 of the Texas Property Code, which addresses "Late Payment of Rent; Fees."  At the times relevant to these consolidated appeals, that section provided:

> (a) A landlord may not charge a tenant a late fee for failing to pay rent unless:
>
>> (1) notice of the fee is included in a written lease;
>>
>> (2) the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent; and
>>
>> (3) the rent has remained unpaid one full day after the date the rent was originally due.
>
> (b) A late fee under this section may include an initial fee and a daily fee for each day the rent continues to remain unpaid.
>
> (c) A landlord who violates this section is liable to the tenant for an amount equal to the sum of $100, three times the amount of the late fee charged in violation of this section, and the tenant's reasonable attorney's fees.
>
> (d) A provision of a lease that purports to waive a right or exempt a party from a liability or duty under this section is void.
>
> (e) This section relates only to a fee, charge, or other sum of money required to be paid under the lease if rent is not paid as provided by Subsection (a)(3), and does not affect the landlord's right to terminate the lease or take other action permitted by the lease or other law. Payment of the fee, charge, or other sum of money by a

tenant does not waive the right or remedies provided by this section.[1]

The quoted portion of the statute is the text in effect at the time of the alleged violations by MAA. The Texas Legislature amended this statute, effective September 1, 2019, to clarify the meaning of "reasonable" within the context of late fees in the statutory scheme. That amendment does not affect this court's analysis here, however, because we do not apply penal laws retroactively.[2]

Plaintiffs in both cases alleged that MAA violated section 92.019 because its late fee scheme is not a reasonable estimate of uncertain damages. The district court granted summary judgment on liability in both cases. Those issues are not before this court. These appeals address the district court's grant of summary judgment ruling that section 92.019 requires a calculation of what damages might be for late payment before a late fee is charged. The district court concluded that even if the late fee was in fact reasonable, the statute would be violated absent a calculation by the landlord to estimate its damages before it charged a late fee. Because MAA presented no evidence that it calculated what its damages from late payments might be before it charged the late fees, the district court granted summary judgment in favor of plaintiffs.

### A.

In the first case, *Cleven*, MAA owned sixty-two apartment properties across Texas that are included in the class action. A number of these MAA properties were acquired in late 2013 as part of a merger with Colonial Properties Trust. Prior to the merger, Colonial typically assessed a $75 initial late fee and a subsequent late fee of either $10 or $15 per day, while some of MAA's properties assessed a $50 fee with a $10 fee for additional days late and others assessed a $75 fee with a $10 fee for additional days late.

---

[1] Tex. Prop. Code Ann. § 92.019 (West 2014).

[2] *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994) ("The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation.").

Following the merger, MAA decided to harmonize the late fee structure and began charging an initial late fee of $75 and at least $10 for every additional day late at all of its properties. The fee-structure change occurred after one of MAA's regional vice presidents recognized an "[e]asy increase income opportunity."

In 2016, named plaintiffs Cathi and Tara Cleven filed a lawsuit against MAA alleging a violation of section 92.019 of the Texas Property Code. The Clevens resided at an MAA property beginning in December 2009. Their lease stated: "you must pay your rent on or before the 1st day of each month (due date) with no grace period. . . . If you don't pay all rent on or before the 3rd day of the month, you'll pay an initial late charge of $75.00 plus a daily late charge of $15.00 per day after that date until paid in full." While living at the MAA property, the Clevens paid their rent late twice. The first time, in May 2015, they paid rent on the fourth day of the month due to their own error. They paid a $75 late fee. In July 2015, Tara Cleven entered an incorrect account number, and the Clevens' July rent payment was not funded. They were initially assessed a late fee of $75 plus three daily $15 late fees. Their building waived the $75 fee, so the Clevens paid $45 in late fees.

The Second Amended Complaint added a second set of named plaintiffs, Areli Arellano and Joe Martinez (the Arellanos). The Arellanos lived at one of MAA's properties from 2014 through 2018. Their lease stated: "You must pay your rent on or before the 1st day of each month (due date). There is no grace period . . . . If you don't pay all rent on or before the 3rd day of the month, you'll pay an initial late charge of $75.00, plus a daily late charge of $10.00 per day after that date until the amount due is paid in full." Over the approximately four-year period that the Arellanos lived at an MAA property, they paid their rent late numerous times. Each time, the Arellanos were assessed the initial $75 fee, plus $10 each day. The Arellanos admit that the payments were properly imposed under the payment schedule. Class counsel found the Arellanos when Areli Arellano posted on Yelp about an unrelated MAA policy. Counsel reached out to determine if the Arellanos had paid any late fees.

After plaintiffs filed their motion for class certification, the magistrate judge conducted a hearing and issued a Report and Recommendation that the class be certified. MAA filed objections to the report. The district court adopted the magistrate judge's report and granted the motion for class certification. The district court certified the following class:

> All persons during the Class Period [from April 10, 2013, to September 30, 2017] who (i) were residential tenants of apartment properties in the State of Texas under written leases where MAA or its predecessor in merger, Colonial, served as an owner or landlord, and (ii) were assessed and paid an initial rent late fee of $75.00 and/or a daily rent late fee of at least $10.00.

This court granted MAA's motion for leave to appeal under Federal Rule of Civil Procedure 23(f). On appeal, MAA challenges the district court's findings on commonality, typicality, adequacy, superiority, predominance, and ascertainability.

**B.**

The related case, *Brown*, involves approximately twenty "Post-branded apartment properties" that MAA acquired when it merged with Post Apartment Homes in December 2016.

The named plaintiff in this case, Nathanael Brown, lived in an MAA property from August 2013 to December 2016. During that time Brown signed four different leases. Each lease contained the following provision: "If Your rent is not paid on or before the third day of the month, a late fee or charge in the amount of 10% of the full monthly rent shall be due as additional rent. Such 'full monthly rent' shall include all additional monthly rent due." Brown paid his rent late three times during his tenancy. The first two times, Brown paid his late fee and MAA subsequently waived the fee. The third time, Brown paid his late fee and the fee was not waived.

Brown filed a complaint in 2017, alleging violations of section 92.019. Brown alleged that "MAA assessed, and collected, late fees from tenants at its Texas properties that were not the product of a prospective estimate of

'uncertain damages' and, in any event, were unreasonable." Brown filed for class certification, which MAA opposed. The magistrate judge conducted a hearing, issued a Report and Recommendation, and recommended that the class be certified. MAA filed objections to the report and requested a hearing. Without a hearing, the district court adopted the Report and Recommendation and granted class certification. The court certified the following class:

> All persons during the class period [April 10, 2013, through September 30, 2017] who (i) were residential lease tenants of Post-branded apartment properties in the State of Texas under written leases (such properties being formerly owned by Post Apartment Homes LP and affiliates and now owned by MAA LP through merger), and (ii) were charged (and which Defendants' records show as paid) at least one fixed rent late fee equal to 10% of their monthly rent.

This court granted MAA's motion for leave to appeal under Federal Rule of Civil Procedure 23(f). MAA argues that the district court erred in holding that Brown satisfied Rule 23's commonality, predominance, and superiority requirements.

## II

Class certification requires plaintiffs to satisfy four requirements under Rule 23(a): (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the claims or defenses of the representative parties must be "typical of the claims or defenses of the class"; and (4) the representative parties must "fairly and adequately protect the interests of the class."[3] If these four conditions are met, a class may be certified under Rule 23(b)(3) when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for

---

[3] Fed. R. Civ. P. 23(a); *In re Monumental Life Ins. Co.*, 365 F.3d 408, 414-15 (5th Cir. 2004).

fairly and efficiently adjudicating the controversy."[4] In addition, "[i]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."[5]

This court reviews an order certifying a class for an abuse of discretion.[6] "An abuse of discretion occurs only when all reasonable persons would reject the view of the district court."[7] "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation."[8] A district court also abuses its discretion if its decision is based on "an erroneous understanding of governing law."[9] Accordingly, legal questions arising in class certification proceedings are reviewed de novo.[10] "A district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class," but "[t]he decision to certify is within the broad discretion of the court" as long as "that discretion [is] exercised within the framework of rule 23."[11]

## III

The central issue in the present cases is whether common questions predominate over individual issues, which largely depends on the interpretation of section 92.019. These cases present merits questions that are "relevant to determining whether the Rule 23 prerequisites for class

---

[4] Fed. R. Civ. P. 23(b)(3).

[5] *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam)).

[6] *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016) (citing *In re Rodriguez*, 695 F.3d 360, 364 (5th Cir. 2012)).

[7] *Union Asset*, 669 F.3d at 638 (citing *Dawson v. United States*, 68 F.3d 886, 896 (5th Cir. 1995)).

[8] *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 836 (5th Cir. 2012) (quoting *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007)).

[9] *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quoting *Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 380 (5th Cir. 2007)).

[10] *Id.*

[11] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

certification are satisfied."[12]  In both *Cleven* and *Brown*, MAA challenges the district court's construction of section 92.019, and the proper construction is a necessary antecedent to the predominance issue.  Thus, with great respect to the dissent, our conclusion does not rest on an improper merits consideration.

## A.

The district court, making an *Erie* guess, held that section 92.019 requires (1) an estimate of the landlord's late payment damages (2) that is made prior to charging a late fee.  According to the district court, section 92.019 is not satisfied when a late fee is imposed without making a calculation of estimated damages even though the late fee charged ultimately approximates the landlord's actual damages.  The district court reasoned that, in order for the late fee to be an "estimate," *some* calculation is required.  Further, because a landlord "may not charge a tenant a late fee for failing to pay rent unless . . . the fee is a reasonable estimate," the district court reasoned that the estimate must be made at or before the time the fee is charged.

## B.

MAA challenges the district court's analysis on two bases.  First, MAA argues that the district court read a "prospective estimate" requirement into 92.019 though none exists.  Second, MAA argues that section 92.019 codified Texas common law regarding liquidated damages provisions, which, according to MAA, only requires that liquidated damages be reasonable in light of actual damages.

We begin with the text of section 92.019, which requires a late fee to be "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent."[13]  The district court reasoned that late fees cannot be an estimate unless some

---

[12] *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

[13] TEX. PROP. CODE ANN. § 92.019(a) (West 2014).

calculation or evaluation was actually employed—in other words, that the "estimate must be the result of a process." The flaw in this reasoning should be obvious. There could be liability under section 92.019 even though the late fees charged were, at the time the lease was signed, in fact "a reasonable estimate of uncertain damages." Under the district court's reading of section 92.019, the punitive provisions apply if the landlord cannot demonstrate that an actual calculation of potential damages was made. This amounts to strict liability, without regard to whether the substantive requirements of section 92.019 were in fact met, which are that, at the time the lease was signed, the late fees were "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent."[14]

The statute does not require the landlord to engage in a process to arrive at a reasonable late fee; it just requires that the late fee agreed upon be a reasonable estimate of damages that are incapable of precise calculation. There are many unknowable factors that might determine a landlord's damages each time a tenant fails to pay rent on time. For example, it may be that the tenant ceases to pay altogether, and the landlord may be required to resort to legal action to re-enter the premises and to recover unpaid rent. There may be lost opportunity to rent to a new tenant if the defaulting tenant wrongfully remains in the premises without paying. Attorney's fees and other legal costs may be involved, and the tenant may well be judgment-proof at the end of the day. The Texas statute expressly recognizes that it is difficult to calculate damages for late payment of rent with precision. Accordingly, the statute does not contemplate that a landlord must set forth or engage in a calculus of potential damages in various potential scenarios to arrive upon a reasonable estimate of damages. If a landlord determines its late fee by reasoning that a $50 initial late fee and a fee of $10 for each day the rent was not thereafter paid would reasonably compensate it, there would

---

[14] *Id.*

be no violation of section 92.019 if those fees were, in fact, a reasonable estimate of the uncertain damages the landlord might suffer.

We employ three canons of construction to arrive at this interpretation. First, words and phrases should be "read in context and construed according to the rules of grammar and common usage," which typically requires courts to look to the term's dictionary definition.[15] Second, we should not look at words in a vacuum but instead construe them in light of what the Texas Legislature intended.[16] Third, courts must construe a penal statute such that any ambiguities are resolved in favor of the penalized party.[17]

The statute protects tenants from paying unreasonable late fees. It thus seems that regardless of whether a process is employed, if the late fee is a reasonable estimate at the time of contracting of damages that are incapable of precise calculation, then the tenant is adequately protected and there should be no liability. The statute's use of the word "estimate" seems to imply at least some forethought.[18] However, we construe the statute in favor of MAA, meaning that MAA need not prove it engaged in a "process" so long as the estimate is, in fact, reasonable.

It is also clear from the text of section 92.019 that the reasonableness of the fee is to be judged based on what was known as well as unknowable

---

[15] *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325 (Tex. 2017) (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 389-90 (Tex. 2014))); *see also City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 261 (Tex. 2018) (quoting *Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017)).

[16] *See City of Amarillo v. Martin*, 971 S.W.2d 426, 428 n.20 (Tex. 1998) ("[I]n some circumstances, words, no matter how plain, will not be construed to cause a result the Legislature almost certainly could not have intended." (quoting *Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 133 (Tex. 1994) (HECHT, J., concurring))).

[17] *See Hovel v. Batzri*, 490 S.W.3d 132, 137-38 (Tex. Ct. App. 2016).

[18] *Estimate*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/estimate (last visited Sep. 30, 2019) (defining estimate as "to judge tentatively or approximately the value, worth, or significance of" and "a rough or approximate calculation," among others); *Estimate*, THE AMERICAN HERITAGE DICTIONARY (5th ed. 2019) (defining estimate as "[a] tentative evaluation or rough calculation, as of worth, quantity, or size").

with precision at the time of contracting. The statute requires that "notice of the fee is included in a written lease."[19] The Texas Legislature clearly did not contemplate that a landlord must re-estimate damages each time a tenant's rent is tardy before imposing a late fee. The statute contemplates that both parties agree to a set fee or fees at the outset of the contract. Accordingly, whether late fees are "a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation" is to be judged as of the time of contracting.

We therefore hold that there is no requirement that a landlord engage in a process to arrive at its late fee so long as the fee is a reasonable estimate at the time of contracting of damages that are incapable of precise calculation. Therefore, the district court erred in interpreting section 92.019 and the case is remanded to the district court to determine if class certification is appropriate.

* * *

The class certification judgments of the district court in these cases are REVERSED, and the cases are REMANDED to the district court for further proceedings not inconsistent with this opinion.

---

[19] Tex. Prop. Code Ann. § 92.019(a) (West 2014).

No. 18-50846
c/w No. 18-50851

James L. Dennis, *Circuit Judge*, dissenting:

In haste to preclude plaintiffs' class-action, the majority erroneously reaches and answers a merits question that is presently beyond its jurisdiction. This court granted leave under Federal Rule of Civil Procedure 23(f) for the defendants to appeal only the district court's September 5, 2018 class certification orders. Thus, the majority's claim that "[t]hese appeals address the district court's grant of summary judgment ruling that section 92.019 [of the Texas Property Code] requires that a calculation of what damages might be for late payment before a late fee is charged," Majority at 4, is simply incorrect. The district court separately granted partial summary judgment on the issue of liability only later, on September 18, 2018, thirteen days after it entered the certification orders that are the subject of this appeal. The partial summary judgment ruling interpreting Texas Property Code § 92.019(a)(2) is therefore irrelevant to whether the earlier class certifications were proper. In fact, because the district court's later partial summary judgment ruling addressed only the defendants' liability and did not resolve damages, it is not a final appealable order, and we would lack jurisdiction to review it even if the defendants had attempted to appeal it. *See Freeman v. Califano*, 574 F.2d 264, 268 (5th Cir. 1978) ("The general rule, and the rule by which this case is controlled, is that if there has been a determination of liability, leaving damages to be measured before judgment is entered, the determination of liability alone is not final." (citing *Wrist-Rocket Mfg. Co., Inc. v. Saunders Archery Co.*, 516 F.2d 846 (8th Cir. 1975); *Western Geophysical Co. v. Bolt Associates, Inc.*, 463 F.2d 101 (2d Cir.), cert. denied, 409 U.S. 1040 (1972); *United States v. Burnett*, 262 F.2d 55 (9th Cir. 1959); and *Fidelity Trust Co. v. Board of Education*, 174 F.2d 642 (7th Cir. 1949))).

13

Properly framed, the class certification question in this case turns only on whether the plaintiffs have raised "a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Ahmad v. Old Republic Nat'l Title Ins. Co.*, 690 F.3d 698, 702 (5th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Because all plaintiffs in this case argue that § 92.019(a)(2) mandates that a landlord engage in a prospective calculation of its expected losses before setting a late-payment fee, the proposed class members have plainly raised "a common contention . . . capable of classwide resolution," *id.*  That should be the end of this appeal—a simple affirmance that does not address whether the plaintiffs are actually correct as to what § 92.019(a)(2) requires.  At this stage, the plaintiffs must show only that they raise a common question of law, not that the question will ultimately be decided in a way that is favorable to the proposed class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013) ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." (emphasis in original)).

Instead, the majority holds that class certification was improper because, in the majority's view, the plaintiffs' interpretation of § 92.019(a)(2) is incorrect, and thus their claims based on this theory will ultimately fail on the merits.  This ruling is doubly problematic because, although it is currently irrelevant and beside the point how such a merits question will ultimately be decided, I think it is clear that the majority's answer is wrong.  Were the issue properly before us, I would contend that the district court correctly determined that § 92.019(a)(2) of the TEXAS PROPERTY CODE requires a landlord to perform a prospective calculation

No. 18-50846
c/w No. 18-50851

of the damages it expects to incur in the event of a late rental payment before setting a late-payment fee that is intended only as reimbursement. This conclusion follows from a plain reading of the statute's text, fidelity to its purpose, and the limited Texas caselaw construing the provision. Because the majority inappropriately reaches this question and then incorrectly decides it, I respectfully dissent.

## I.

FEDERAL RULE OF CIVIL PROCEDURE 23 allows named plaintiffs to pursue relief on behalf of a larger class of plaintiffs when certain requirements are met. If the prerequisites of Rule 23(a) are satisfied,[1] Rule 23(b) then sets forth several options for "maintain[ing]" a class action, any one of which is sufficient for a class to be certified. As relevant here, Rule 23(b)(3) permits certification if the plaintiffs demonstrate (1) predominance, *i.e.*, "that questions common to the class members predominate over questions affecting only individual members"; and (2) superiority, *i.e.*, "that class resolution is superior to available methods for fairly and efficiently adjudicating the controversy." *Ackal v. Centennial Beauregard Cellular*

---

[1] Under Rule 23(a), Plaintiffs must show (1) numerosity, *i.e.*, a class so large that joinder of all members is impracticable; (2) commonality, *i.e.*, that there are questions of law or fact common to the class; (3) typicality, *i.e.*, that the named plaintiffs' claims or defenses are typical of those of the class; and (4) adequacy of representation, *i.e.*, that the representatives will fairly and adequately protect the interests of the class. *Ackal v. Centennial Beauregard Cellular L.L.C.*, 700 F.3d 212, 216 (5th Cir. 2012) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). We have also held that the Rule implicitly requires that the class be precisely ascertainable. *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 n.3 (5th Cir. 2007). The defendants raise some perfunctory alternative challenges to the district court's decision, arguing that the named plaintiffs do not satisfy the typicality and adequacy of representation requirements and that the class is not fairly ascertainable. As the majority does not address these points and I see no error in the district court's resolution of the matters, I do not address them further.

*L.L.C.*, 700 F.3d 212, 216 (5th Cir. 2012) (quoting *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 129 (5th Cir. 2005)).

The majority states that "whether common questions predominate over individual issues . . . largely depends on the interpretation of section 92.019." Majority at 8. But this is a failure to see the forest for the trees. How § 92.019 should be interpreted and whether it requires a landlord to engage in a prospective evaluation of its damages before setting a late fee *are themselves* common questions of law that predominate over any unique questions that would be pertinent to only each individual plaintiff's claim. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage," and a district court generally "has no 'authority to conduct a preliminary inquiry into the merits of a suit' at class certification unless it is necessary 'to determine the propriety of certification.'" *Amgen Inc.*, 568 U.S. at 466 (quoting *Dukes*, 564 U.S. at 351 n.6).

Here, no merits evaluation is necessary to determine that class certification is proper. "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* at 459 (emphasis in original). "What matters to class certification . . . is . . . the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). In other words, that the proper interpretation of § 92.019(a)(2) is a crucial component of each of the plaintiffs' claims and that resolving that question will all at once largely determine whether the plaintiffs prevail on this theory means that a common question predominates. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) ("Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole'

and when they 'turn on questions of law applicable in the same manner to each member of the class.'" (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979))). Determining the validity of the plaintiffs' "common contention"—that § 92.019(a)(2) requires a landlord to engage in a prospective evaluation of her damages before setting a late-payment fee— "will resolve an issue that is central to the validity of each one of the claims in one stroke," and thus class certification is appropriate. *Ahmad*, 690 F.3d at 702 (quoting *Dukes*, 564 U.S. at 350).

The majority errs by taking it upon itself to make that stroke, prematurely resolving the merits of the shared "issue that is central to the validity of each one of the claims." *Id.* That a shared central question exists is sufficient for us to affirm at this juncture, and the answer to that question on the merits should be "left to be resolved in the first instance at the district court." *Torres v. S.G.E. Mgt., L.L.C.*, 838 F.3d 629, 635 (5th Cir. 2016). If the defendants wish to obtain review of the partial summary judgment decision on liability that the district court issued after the certification order that is currently on appeal, they must do so later, after damages have been determined and the rulings have been reduced to a final judgment, because we lack jurisdiction to address the matter in this procedural posture.[2] *See Califano*, 574 F.2d at 268; Fed R. Civ. P. 23(f) (authorizing a court of appeals to allow an interlocutory appeal of "an order granting or denying class-action certification under this rule" and not any other district court orders). An interlocutory appeal of a class certification decision is not intended to serve as a backdoor for a circuit court to review the merits of a

---

[2] Indeed, had the district court stayed proceedings while the defendants sought leave from our court to appeal its certification decision, the partial summary judgment ruling would not have even been included in the record on appeal. It simply has no bearing on whether the prior certification decision was correct.

claim before the appellate process would normally allow, *see Amgen Inc.*, 568 U.S. at 466 (quoting *Dukes*, 564 U.S. at 351 n.6), and the majority is mistaken to use it as such.

## II.

The majority compounds its error by answering incorrectly the extrajudicial question that we ought not be answering in the first place. Section 92.019(a)(2) of the TEXAS PROPERTY CODE provides that "[a] landlord may not charge a tenant a late fee for failing to pay rent unless . . . the fee is a reasonable estimate of uncertain damages to the landlord that are incapable of precise calculation and result from late payment of rent." The majority interprets this statute not to require that a landlord actually engage in a process of calculation. But this construction is inconsistent with the Texas common law § 92.019(a)(2) is intended to embody, as well as the plain text of the statute and what caselaw from Texas courts exists on the issue.

Because this is a diversity action, we must interpret § 92.019(a)(2) in the manner that Texas state courts would interpret it. *Mid–Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000). It is useful, then, to outline at the outset the manner in which Texas courts have addressed liquidated damages provisions like the late-payment fees that § 92.019(a)(2) authorizes. *See Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020) (a "liquidated damages contract provision establishes an 'acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach.'" (quoting *Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 431 (Tex. 2005)). Although the freedom to contract is a policy "deeply embedded" in Texas's jurisprudence, equally established is the "universal rule" that damages for a breach of contract— like a failure to pay rent by an agreed-upon date—"are limited to just compensation for the loss or damage actually sustained." *Id.* (quoting

No. 18-50846
c/w No. 18-50851

*Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex. 1952)).  Thus, a liquidated damages provision "must not be punitive, neither in design nor operation." *Id.*

To give effect to this maxim, Texas courts have formulated several factors that must be met in order for a liquidated damages provision to be enforceable.  First, the harm caused by the contemplated breach must be incapable of precise calculation or difficult to accurately estimate.  *Id.* (citing *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex. 1991)).  Because the purpose of a liquidated damage provision is simply to make injured parties whole and not to enrich one party or punish the other, the fee it provides for cannot displace the actual damages caused by a breach when such damages are susceptible to being readily ascertained.  *See id.*  Second, the amount of liquidated damages called for must be "a reasonable forecast of just compensation" arrived at the time of contracting.  *Id.* (citing *Philips*, 820 S.W.2d at 788).  And third, when a breach occurs, the amount of the award called for in the liquidated provisions cannot be significantly different from the actual damages suffered.  *Id.* at 192-93.  Regardless of whether a liquidated damage provision was a reasonable forecast of potential damages at the time of contracting, "[w]hen an 'unbridgeable discrepancy' exists between 'liquidated damages provisions as written and the unfortunate reality in application,' the provisions are not enforceable."  *Id.* at 193 (quoting *FPL Energy, LLC v. TXU Portfolio Mgmt. Co., L.P.*, 426 S.W.3d 59, 72 (Tex. 2014)).

It was against this backdrop of these decisions that the Texas legislature enacted § 92.019(a)(2), explicitly stating that the statute codified the common law on contractual liquidated damage clauses.  *See* 2007 Leg., 80(R)    (Tex.    May    17,    2007)    at    43:30-55:15, http://tlcsenate.granicus.com/MediaPlayer.php?view_id=16&clip_id=302 3 (recounting that, originally, the bill capped late fees at 7% of the unpaid rent,

but that the apartment industry "negotiated" to instead make the provision mirror "the common law" by allowing only "a reasonable estimation of the uncertain damages of collecting delinquent rent"). The legislature intended to apply the adage that a landlord—like any other contracting party—does not have the right to enforce a stipulation that would result in her receiving more than just compensation. *See Stewart v. Basey*, 150 Tex. 666, 670, 245 S.W.2d 484, 486 (1952). Thus, § 92.019(a)(2) was obviously intended to limit landlords to late fees that are calculated to reimburse them for their late payment damages, not to provide an additional source of income

The majority rules that § 92.019(a)(2) is complied with if a landlord can show at trial that the late fee actually is equal to a reasonable estimate of a landlord's damages, regardless of how the fee amount was originally set. But this is inconsistent with the common law § 92.019(a)(2) embodies for several reasons. First, as stated, to enforce a liquidated damages provision, a party must *separately* show both that the amount was the product of a reasonable forecast at the time of contracting and that the amount does not differ significantly from the party's actual damages. *Atrium Med. Ctr.*, 595 S.W.3d at 192-93. The majority's approach would collapse these separate prongs of the test into a single requirement, requiring only that a landlord show after the fact that the late fee is roughly equal to a landlord's actual damages. Second, and more fundamentally, under the majority's approach, a landlord could charge an arbitrary late fee for the express purpose of extracting additional profits from tenants, and so long as the landlord can contrive some *post hoc* justification for the figure, § 92.019(a)(2) would not be violated. Indeed, as the majority notes, there is evidence in this very case that one of the defendants adopted its late fee specifically as an "[e]asy increase income opportunity." This is precisely the sort of unjust enrichment that the Texas common law does not allow and that § 92.019(a)(2) was intended

to prevent. In Texas, liquidated damages "must not be punitive, neither *in design* nor operation." *Id.* at 192 (emphasis added). The majority's ruling goes a long way toward sanctioning a landlord's use of late fees as a profit source rather than reimbursement for her late-payment damages, and it is therefore counter to § 92.019(a)(2)'s clear purpose.

Even setting aside the substantial body of common law that § 92.019(a)(2) codified, the majority's interpretation is not a reasonable reading of the text of the statute. "If the words of a statute are clear and unambiguous," Texas courts "apply them according to their plain and common meaning." *Galbraith Engr. Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). The majority acknowledges that the plain and common meaning of "estimate" is the result of "[a] tentative evaluation or rough calculation, as of worth, quantity, or size." THE AMERICAN HERITAGE DICTIONARY 609 (5th ed. 2011); *see* Majority at 11 n.18. But the majority fails to give effect to this definition. Because an estimate is the result of a calculation or evaluation, it must necessarily be *preceded* by a calculation or evaluation. In other words, by limiting a late fee to "a reasonable estimate of uncertain damages to the landlord that . . . result from late payment of rent," the language of § 92.019(a)(2) plainly requires a landlord to attempt to calculate or evaluate what her late-payment damages would be and then use that number to set a late fee that is intended only to reimburse the landlord for those damages, not to provide an additional source of profit.

The majority's rule—that § 92.019(a)(2) is not violated so long as a landlord can demonstrate after the fact that the late fee is equal to a reasonable estimate of her damages—might make sense if the statute said that a late fee must be "*equal to* a reasonable estimate." But § 92.019(a)(2) does not say that. Instead, the law mandates that a late fee must *be* "a

reasonable estimate." The majority's construction would permit a landlord to charge a fee that is not an estimate at all—a figure chosen arbitrarily is not the result of "[a] tentative evaluation or rough calculation," THE AMERICAN HERITAGE DICTIONARY 609, even if a retroactive justification for the number can later be produced. The majority's interpretation thus does not fit the plain language of the statute.

Lastly, the case law in this area, albeit limited, indicates that Texas state courts would disagree with the majority's proposition. In *Mosaic Baybrook One, L.P. v. Cessor*, the Texas Court of Appeals affirmed certification of a similar tenant class on the questions, *inter alia*, of (1) whether the landlord defendants in that case "conduct[ed] an estimate of their damages . . . resulting from late payment of rent" and (2) whether the fees charged were a reasonable estimate of those uncertain damages. No. 01-18-01057-CV, 2020 WL 5637212, at *5 (Tex. App. Sept. 22, 2020). Were the majority's interpretation of the statute correct, only the latter question would be relevant. By stating that the question of whether the landlord-defendant conducted an estimate was a shared question of fact on which the plaintiffs' claims all turned, the Texas appeals court necessarily ruled that § 92.019 requires a landlord to engage in a prospective calculation when setting a late fee, and that a *post hoc* rationalization is not sufficient.

* * *

In sum, the majority not only improperly uses the appeal of the district court's class certification decision to address the merits of the plaintiffs' claims, but it also gets the question it should not be answering wrong. That the plaintiffs all raised a common contention about how § 92.019 should be interpreted that is central to their claims for relief is sufficient reason for us to affirm class certification, and we do not have jurisdiction to review the district court's partial summary judgment ruling on only the issue of liability

No. 18-50846
c/w No. 18-50851

at this stage in the litigation.  Moreover, even if the question were properly before us, I would not adopt the majority's interpretation of § 92.019, which is contrary to its purpose and the common law the statute incorporated, inconsistent with the text of the statute, and counter to what Texas state court precedent exists on this issue.  Accordingly, I respectfully dissent.